By the Court.

This was clearly a departure from necessity. If the ship had been bound under the policy to have gone first for Cork, or if an election was left to the assured, and the master had before the departure made his election to go first to that port, and had been prevented, as- here, by causes insured against, he had a fight, within the policy, to bear away to Dublin, to obtain information as to the state of the markets at Cork and Liverpool, and from thence to go to either at his choice, as his information and *309 * judgment should lead him. The plaintiff has main- [ * 368 ] tained his action, and is entitled to judgment.
After the opinion of the Court was pronounced, and the defendants were defaulted, the question of the amount of the damages, to which the plaintiff was entitled, was submitted to the determination of the Court without argument, upon an agreed statement, the substance of which will appear in the opinion of the Court, which was afterwards delivered in Boston at an adjournment of the last March term in Suffolk, by
Sewall, J.
The plaintiff, owner and interested one quarter part in the ship Olive Branch and her cargo, was insured thereon the sum of 2000 dollars, viz. 1500 dollars on the ship, and 500 dollars on the cargo, in a policy underwritten by the defendants, in which the ship is valued at 6000 dollars. The voyage insured being from Kennebunk to Cork or Liverpool, the ship was stranded in the course of it, according to the former state of facts, and the decision thereon, and having been relieved from the disaster, at some expense and loss, she arrived afterwards with her cargo at Dublin, in Ireland.
It has been agreed by the parties, that the expenses and damages incurred by the disaster, computed at the sum of 4924 dollars, shall be adjusted as a general average upon the ship, cargo, freight, and a deck load, to be included on account of some peculiar circumstances in the estimate of the loss and in the contribution. The parties also agree that, in this adjustment, the value of the property as at Dublin shall be taken, and that the ship was there worth 8000 dollars, the cargo 5510 dollars, the freight 1094 dollars, and the deck load 332 dollars; and it is considered by the parties that each particular is assessed at this valuation; and that there has been sustained and paid thereon a loss and contribution of 28| per cent. They further agree that the value of the cargo, as shipped, and at the commencement of the risk, was 2000 dollars.
*Upon this statement, the Court are to determine [ * 369 ] what sum for the loss demanded is recoverable upon this policy ; whether the whole sum, supposed to be assessed upon the plaintiff, and paid by him, upon his quarter part of the ship and cargo; or only the same rate of loss upon the sum insured, which was paid upon the supposed valuation at Dublin. The plaintiff contends that his whole interest is to be considered as insured and covered by the policy, and therefore that he is entitled to recover against his insurers the whole sum lost and paid, in the supposed general average, upon his quarter part of the ship and cargo; notwithstanding the increased valuation as taken at Dublin, by which the contribution is apportioned and assessed.
*310 Questions are continually arising on the operation and practical construction of policies of insurance — a species of contract liable to a variety of incidents, and to be enforced in a great number oi cases distinguishable from each other in the principles applicable to the decision. For rules to govern in these inquiries, there is a more than ordinary reference to established usages; and these, when ascertained, are found to be suitable applications of general principles, or not inconsistent with them, or with the tenor of the contract to be explained and enforced, are considered as authoritative upon the parties. A reference to usage is fairly implied in contracts of a commercial nature, and is to be presumed, indeed, in the construction of contracts generally, where the conclusion is not avoided by special circumstances or stipulations.
Rules of this description and authority have been derived to us from our parent country, from usages established in England, and recognized in judicial decisions there (1) and in this state. Among these will be found the following, applicable to the present inquiry : — 1. That the value of a vessel and goods, as an insurable interest, is to be taken at the port of lading, or where the risk commences.
2. That this value may be proved by a stipulation [ * 37® ] between the parties, *as in a valued policy ; and then, in the event of a total loss, the value is understood to be settled without further proof. But valued policies have this operation only in the event of a total, and not in the adjustment of a partial loss, whether general or particular. And, 3. That in averages and contributions, the value, as between the parties interested in the adventure or property liable, is to be taken as it may be estimated at the time and place of the adjustment. (2)
The etfect of this subsequent valuation, in determining the proportion of loss recoverable by the assured in a case of general average, has not been settled, I believe, by any judicial decision ; and I have not found any rule or usage respecting a case, where the circumstance has occurred of a valuation in adjusting a general average, materially varying from the value of the property as insured. The reason may be, that the case is very unusual, where goods are to be estimated at a very considerable advance and profit, besides the expense of freight, in adjusting a contribution for salvage at their port of discharge ; and it may at least be conjectured, that never before did a vessel become a third part more valuable, in a foreign port, and after a long voyage, than she was in the port from which she sailed, and at the commencement of her voyage; unless *311 oy means of some addition and repairs of an extraordinary nature made in the course of the voyage.
The case of Lewis vs. Rucker, (3) decided by Lord Mansfield, has proved a leading case on the subject of the adjustment of partial losses. The decision itself settled the manner m which the proportion of a partial loss, recoverable from the insurer, is to be estimated, when goods, insured at their full value, arrive at the port of discharge after sustaining some sea damage in the course of the voyage. The amount of damage is to be ascertained by a sale of the damaged goods ; the price obtained for them is to be compared with the price of similar articles, arriving in a sound state at the same port; and the deficiency of price * fixes the [ * -371 ] per centum or proportion of loss, recoverable from the insurer according to the sum insured, not exceeding the value of the goods at the place of shipment, or where the risk insured commenced. That case arose upon a valued policy, and the assured was allowed the value stipulated, the insurance being to the same amount. But Marshall observes upon it, that this happened, because the value stipulated was taken to be the real value at the place of shipment; and this is plain from the reasoning of Lord Mansfield, according to the report of that case, in which the principles and usages, which govern in cases of partial loss, are very fully stated and recognized.
In the subsequent case of Le Cras vs. Hughes, (4) where the value in the policy exceeded the interest of the assured, it is more explicitly stated to be the constant usage, in cases of valued policies, to adjust a partial loss in the same manner as if the policy were an open one. The court proceeded upon that ground, and the value stipulated in the policy was disregarded in estimating the sum recoverable, it being considered as a case of partial loss.
The loss now demanded is also a partial loss ; there is no pretence for calling it a total loss ; there has been no abandonment; and the ship and goods were taken by the assured, as having arrived at their port of destination. The loss in question is not a deduction in kind, or a direct damage sustained; but in the nature of a charge incurred, the amount of which is fixed in money by the supposed assessment. The expedients of a sale, or of an estimate of the property at the port of destination, employed in the cases cited, are not required in this case, to ascertain the amount of damage ; although the parties have thought an estimate necessary for the purpose of determining the proportion of loss recoverable from the underwriters. As it respects the ship insured, this is also a case of a valued policy. *312 Upon a ship valued at 6000 dollars in the policy, the plaintiff has paid the sum of 575 dollars, for his quarter part of the sum assessed by the estimate of value at Dublin, as agreed by the parties. [ * 372 ] * Is he to be reimbursed and indemnified to that amount ? The defendants object, that the sum assessed, as the proportion of general average due or paid upon the ship, supposes the plaintiffs quarter part to have been of the value of 2000 dollars, and he is insured, by the policy in question, only 1500 dollars upon that interest.
I am not prepared to say what would be the decision, in the case of a general average actually adjusted in a foreign port, between several underwriters having distinct concerns, where a ship, insured at her full value at the time of sailing, had been, against the will of the owner or his agent, assessed, and the assured had unavoidably paid, upon an increased valuation unreasonably insisted on. In such a case, the aggravation of the loss might be considered as the consequence of a peril insured against; and the assured, having covered the full value of the vessel, might be entitled to recover the entire sum necessarily expended in the general average. The vessel continuing the same, not enlarged or altered, the estimate, attributing to her an increase of value, would be, in the case supposed, no real change in the state of the property, insured at its full value.
Nor is a vessel, generally speaking, an article upon which a profi' in a foreign market can be insured or expected ; nor is it usually sent to a foreign port for sale. It is rather the instrument of trade and business, like a shop or warehouse, than the immediate subject of traffic; and the voyage and employment are ordinarily estimated as a diminution of value to a vessel, and as a matter of expense to the- owner; for which he expects an indemnification in the hire or freight, or in the profits accruing from the use of the vessel in the carriage of his own goods. It is perhaps upon these considerations, that a variety of positive regulations have been established from time to time in foreign states, as to the degree in which a ship shall be liable to contribute in a case of general average. (5)
But the case now presented is materially different, in [ *373 ] *the circumstances relied on for the plaintiff, from the case supposed. No reason is assigned for an increased value of the ship on her arrival at Dublin, supposing the stipulated value to have been the full value at Kennebunlc, where the risk commenced. The parties have not agreed, in the state of facts, that the value there was as stipulated, and no more; and in the adjustment of partial losses, valued policies are to be treated as open poli *313 cies, and the insurer is not to be prejudiced or injured by a stipulation, which is commonly made at the nomination of the assured, without examination or inquiry. In the event of a total loss, the insurer is liable only to the extent of his premium, received as a consideration for his undertaking. When this is enforced according to the letter of it, he sustains no injury, whether the value stipulated exceeds or falls short of the interest of the assured. In that case, supposing an over-insurance by means of a valued policy, the objection to the transaction is altogether of a public nature; and is grounded upon those moral and political considerations, which require contracts of insurance to be restrained to the cases of real interest, and to indemnities for actual losses; and, supposing the property undervalued, there is no objection to the contract, arising from those considerations.
But a mistaken or false valuation would, if adhered to in the event of a partial loss, produce an operation, under some circumstances at least, injurious to the insurer; and the fair intentions of the parties would not be carried into effect. This may be explained by supposing the case of a ship, valued in a policy of insurance at half her real value, and insured to the same amount. If every partial loss, say sea damage, ascertainable by the expense of repairs, or a contribution in a general average, the amount of which is fixed by the adjustment, were recoverable upon such a policy to the full amount, as happening to a property fully insured, the premium of insurance, as to every risk of that kind, would be reduced one half; that is, for 100 dollars underwritten, the insurer would pay for a supposed loss as to him, *to the extent of an [ * 374 ] insurance Upon 200 dollars; and although more than the actual loss would not be in that case recovered, yet the indemnity would be obtained from the wrong hand, and from a party not liable to the extent, by the fair intentions of the contract.
The rule is, however, fixed and established by usages for a long time recognized, and by several judicial decisions, and is upon these considerations reasonable and satisfactory, that stipulations of value, when they are questioned and disputable, are to be disregarded in cases of partial and average losses. And the rate of the loss being ascertained, the insurer is liable in the proportion, which the sum insured bears to the actual value of the property included in the risk described in the policy.
The impossibility, as I may say, of the rise in value of a vessel in a foreign port, such as is supposed in the case at bar, leads strongly to the conclusion that the supposed value at Dublin, as stated in the agreement of the parties, establishes only the fact, that the ship was not insured at her full value and then there is no *314 in the case, as it respects the ship. As to 500 dollars of the sum upon which the average loss on the ship is calculated, the plaintiff was his own insurer, to use the mercantile expression, from the commencement of the risk insured ; and that insurance, and not this, is liable to the assessment.
The incomplete statement of facts makes it necessary to say further, that, if 6000 dollars was in fact the value of the ship at the time to which the insurance relates, the insurer is not liable to the extent of an average loss, so materially aggravated by the supposed increase of value, attributed to her when she arrived at Dublin; an estimate wholly unaccountable upon that supposition, but upon circumstances of alteration and accession to the interest of the assured, after the policy was effected, and for which the insurers by this policy are not liable : such, for instance, would be an important enlargement or improvement of the hull, ara provision of [ * 375 ] rigging and furniture of an extraordinary nature, * not included in the valuation by the policy, and made after the departure of the vessel. For, as to an additional value arising from an accession of that kind, the assured would be, I think, his own underwriter, as in the other case.
It seems, however, best to accord with the state of facts to understand the value at Dublin as establishing the fact, that the ship was undervalued by the stipulation; and as neither insurer nor assured are concluded by a stipulation of value in the adjustment of a partial loss, the average recoverable on the ship must be restricted to the sum insured on the ship.
In the second place, respecting the cargo, which is liable also for the proportion of the general average, the value, as shipped, was 2000 dollars, and no more; and at that value the plaintiff’s interest in the cargo was fully insured, to the extent of the prime cost. Cargoes are shipped to foreign markets in the expectation of an additional value, to accrue to them on their arrival. When this reasonable expectation, operating in the course of trade, is fulfilled, the shipper has acquired a new property; which may, in fact, and ought to be, distinctly valued and estimated in a contribution cal culated at the port of discharge. A charge and expense, by which the arrival is procured, is assessed upon the cargo at its increased value ; an estimate necessarily including, with the prime cost, the profits accruing thereon at the foreign market. For this assessment the shipper is not to be indemnified by the insurer upon the prime cost, unless his contract is, by any usage or rule, to be extended to the security of the profits. The prime cost of a cargo of goods, and the expected profits on their arrival at a foreign market, are, in practice at least, treated as distinct insurable interests. The insur *315 anee upon the goods is restricted to their value at the port of lading, or their prime cost, including all expenses upon them until laden on board. But it is not unusual to have an insurance upon the expected profits, eo nomine, made at the *same time, [ *376 J as upon an interest which may be distinctly valued and estimated.
Anciently, in England, the usage was, in cases of jettison and con Iribution, to take the value of the goods thrown out, and those liable to the contribution, at the prime cost, when the accident happened before the voyage was half performed. This rule is prescribed in the ancient treatise Consolato Del Mare. The more modern usage is, however, as has been stated, to take their value at the place where the average is adjusted.
One consequence of this usage may be, in a particular case, that goods arriving free of damage, but subject to some charge or expense, which is the price of their safety from a peril insured against, are so considerably increased in value from their prime cost, as that a net profit upon them is to be taken and calculated in the assessment, where a general average is in fact adjusted abroad ; and this after deducting all expenses of freight; which, forming a separate item in the contribution, is not to be included in the valuation of the goods. When this happens, — and it is supposed to have happened in the case at bar, — this additional value, being in fact a profit upon the adventure, is to be considered as an interest acquired to the assured, distinct from the prime cost of the cargo; and the contribution paid or calculated upon it, is not recoverable by virtue of an insurance covering the goods at the prime cost.
This reasoning, and the conclusions drawn from it, apply exclusively to the case of sums or articles liable in the contribution, but not covered by the policy of insurance. Of this description is the sum, in which the vessel was undervalued by the policy, and the amount of profits gained on the adventure or cargo of goods, as valued at the port of discharge, sums introduced in the case at bar by the particular agreement, and consent of the parties.
The question in the present case is not the proportion of damage sustained, that being fixed by the computation * in money; but what proportion of the loss thus as- [ * 377 ] certained is recoverable on this policy. And it is the opinion of the Court, that the defendants are liable in the proportion which the sum underwritten by them upon the vessel bears to the actual value of the vessel when insured ; and the valuation stated in the policy is not to be regarded ; and that the defendants are also liable for the whole sum paid upon the cargo, valued at the prime cost; but not for the contribution calculated upon the in *316 creased value or profits of the cargo, as estimated at the port of Dublin.
The result is, that the sum of 575 dollars is the loss upon the part of the ship and cargo insured by the policy in question ; from which is to be deducted the abatement of one per cent., stipulated by the policy ; and to the balance is to be added interest from the time it became due and payable.

 Vide March. 541.

 Malloy, Lib. II. c. 6, § 16. — Ibid. c. 5, § A. — Abbott, 347

 2 Burr. 1167.

 Park. III. — Marsh. 84.

 Abbott, 346. — Marsh. 467