# SUPREME JUDICIAL COURT

FOR THE

## COUNTIES OF PLYMOUTH, BARNSTABLE, BRISTOL, AND DUKES-COUNTY, OCTOBER TERM 1823, AT PLYMOUTH.

PRESENT:

Hon. ISAAC PARKER, Chief Justice,
Hon. GEORGE THACHER, } Justices.
Hon. SAMUEL S. WILDE, }

## Bedford Commercial Insurance Company
### *versus* John A. Parker *et al.*

A ship insured was accidentally stranded within a few miles of her port of des-
tination. The owner of the cargo, which consisted of iron, saved part of it at
his own expense. The insurers afterwards sent men on board, who endeavoured
without success to get the ship off, and at the same time the men employed by
the owner saved 40 tons more of the iron. The two parties of men acted sep-
arately, though sometimes assisting each other. After this the insurers contract-
ed to pay D 2600 dollars if he would get the ship off, and the owner agreed that
they might offer D 600 dollars for saving the iron, provided the ship should not
be saved. D got the ship off, and brought her to the wharf with 155 tons of
iron on board.
It was *held*, that the 155 tons were liable to contribute in general average to the
260° dollars, and that the rest of the iron was not; that the contract with D
having been made *bonâ fide*, was binding on the parties to the contribution, and
that the owner should not be allowed to show that the iron might have been
saved for-a less sum than his proportion; and that aid rendered by the owner's
men to those of the insurers might be set off *pro tanto* against any claim for
compensation for assisting to save the 40 tons.

THIS was an action of *assumpsit* to recover a proportion
of expenses incurred by the plaintiffs in getting off and so

curing the ship Phœnix and her cargo, belonging to the de-fendants, the ship having been stranded.

At the trial, before *Parker* C. J., at April term 1823, at Taunton, the following facts were proved. The ship was insured by the plaintiffs in July, 1821, at and from James River to ports in Europe, and back to her port of discharge in the United States. On her homeward voyage she struck, in the month of November, 1821, on a reef of rocks out-side of the harbour of New Bedford, at the distance of about nine miles from the town, but within eighty or ninety yards from the shore, and was in imminent peril from the sea, the tide flowing into and out of her, and filling the lower hold. Within a short time after the vessel stranded the defendants offered to abandon her to the plaintiffs, who refused to ac-cept the abandonment and at the same time expressed an intention to take measures to preserve the ship, the defend-ants agreeing that no act done by the plaintiffs with that ob-ject should prejudice them on the question of the defendants' right to abandon.

Men were sent to the vessel by the plaintiffs, to save what they could of the sails and rigging &c., and some of the iron, of which her cargo consisted, was taken out by them and carried to New Bedford. A large quantity also of the iron was saved by men employed at the expense of the de-fendants. About the 1st of December from eighty to a hun-dred men were employed by the plaintiffs to get the ship off, but without success, but considerable quantities of iron were taken out of her hold, and some of the men employed by the plaintiffs aided, by pumping and otherwise, to save the cargo ; but during all this time the defendants had men on board, who were employed at their expense in getting out the iron. Forty tons were taken from the ship, and were brought to New Bedford by the sloop Ann, in the employ-ment of the plaintiffs, but the defendants had vessels there ready to have taken the iron. All the labor and difficulty in saving it was in getting it from the ship's hold, and this was done by the defendants' men ; and it was put into the sloop Ann, which from reasons of convenience was along-side the ship, to save the trouble of removing the sloop

After this attempt the directors of the company authoriz- Bedford Com. Ins. Co. v. Parker. ed two of their number to offer 2000, or, if it should be necessary, 2500 dollars, as a compensation to any person who would undertake to get the ship off, the contractor to be paid nothing unless he should succeed ; and with the consent of Parker, one of the defendants, the agents were to offer 600 dollars, provided the iron should be all taken out and the vessel should not be removed, and so in a certain proportion for so much iron as should be so taken out.

The agents contracted with one Delano and others, engaging to pay them 2600 dollars if the vessel and the whole cargo should be made secure, but no express stipulation was made relative to the iron separately. It was understood however, that the contractors were to be paid in proportion to what might be saved, to the extent of 600 dollars. They got the vessel off and brought her safely into the harbour, having about 155 tons of iron still on board, which was received by the defendants.

The ship also was received by the defendants, the parties to the policy having agreed that the insurers should pay the sum of 1750 dollars for the repairs necessary upon the ship.

It was also in evidence, that when the plaintiffs settled their accounts with the laborers who had been employed by them to aid in saving the ship, and who had also assisted in saving the iron, they refused to pay those men who had been employed by the defendants, always referring them to the defendants ; and during the whole time that the plaintiffs and defendants were engaged in attempting to save the ship and cargo, those parties of men acted separately, though sometimes assisting each other.

The defendants offered to prove, by declarations of some of the directors of the company, that it was agreed between them, that the defendants were to be liable only to the extent of 600 dollars in lieu of contribution on the cargo ; but they were not allowed to go into this evidence, there being no proof of any authority to those directors to make such an engagement.

The plaintiffs claimed a contribution on the whole cargo, as well on that part which was taken out and secured by

the defendants, as on that which was taken out by the ' pla.n-
tiffs or remained on board the ship until delivered in safety
at the wharf.

The defendants contended that the plaintiffs were not en-
titled to recover any thing, since the ship was within the
reach and power of the defendants, so that they were able
and willing to remove the cargo, and were actually doing
so, it being proved, that although the ship lay in a danger-
ous situation, yet that it was probable the bottom would
remain fixed until the spring, when the iron might be easily
removed.   But they insisted, that if they were answerable at
all for contribution, they were liable only for the iron actu-
ally on board the ship when she was got off the rocks and
brought into the harbour, and not for any part of it which
had been secured at their own expense.

The defendants also offered evidence to show that the
whole of the iron might have been removed at an expense
of 500 or 600 dollars, but the judge considered it irrelevant,
it appearing that the bargain with 'Delano and others was
fairly made, and it being testified, that considering the un-
certainty and risk, it was not unreasonable.

By the recommendation of the judge, a verdict was taken
for the plaintiffs for the whole sum claimed as contribution
on all the cargo, saving all the questions of law which arise
out of the case ; and the parties agreed, that if the decision
of the Court should make it necessary, assessors should be
appointed by the Court, and that the verdict should be so
altered as to stand for such sum as should be found due.

*Oct. 16th.*    *W. Baylies* and *Coffin*, for the defendants, now contended
that there was not a community of peril to the ship and car-
go, and that the money expended by the plaintiffs was not
for the mutual benefit of themselves and the defendants, the
cargo being in a situation to be saved at all events.   The
plaintiffs therefore were not entitled to make a claim of
general average. Marsh. on Ins. (2d ed.) *c.* 12, § 7 ; *Padel-
ford* v. *Boardman*, 4 Mass. R. 548 ; *Whitteridge* v. *Norris*,
6 Mass. R. 125 ; *Nickerson* v. *Tyson*, 8 Mass. R. 467.
The voyage was terminated, and the expenses, not having
been incurred for the purpose of enabling the ship to con-

tinue her voyage, are not a subject of general average. Abbott, *pt.* 3, *c.* 8, § 8. The ship was not stranded for the preservation of the cargo, and is not an object of contribution. *Bradhurst* v. *Col. Ins. Co.* 9 Johns. R. 9. There are cases where the maxim, *save who can*, will apply. The ship had arrived at her port of destination, and the cargo was under the control of the owners of it. They had a right to save it themselves, without the concurrence of persons interested in the ship. If the cargo had belonged to a number of consignees, any one of them would have had a right to save his portion of it, without being liable to general average.

The plaintiffs, at most, are entitled to contribution only on that part of the cargo which was on board at the time when the expenses of saving the ship were incurred. 1 Phil. Ins. 363.

But if the defendants are liable at all, it is upon the contract between them and the plaintiffs, of which we attempted to give evidence. In many cases the principal is bound by acts done by his agent without authority ; *Runquist* v. *Ditchell*, 3 Esp. 66 ; and in the present case evidence of the declarations of the agents, which made part of the *res gestæ*, ought to have been admitted. But if it was rightly rejected, still enough appears in the case to show such contract. The company contracted to pay 2000 dollars for saving the ship, and 600 for saving the cargo. This last sum was understood to be the limit of the defendants' liability.

Should we fail on this point, then we say that the plaintiffs are entitled only to a *quantum meruit* for their services ; which we offered to show were not worth more than 500 dollars. The cargo was comparatively safe on the rocks, and by allowing the ship to be moved, the defendants put their property in jeopardy, in order to enable the plaintiffs to save theirs The defendants ought not, for their consent, to be put into a worse situation than if the ship had been totally lost.

We say, however, that the whole subject has been finally adjusted by virtue of the agreement by which the company contracted to deliver the iron and cables to the defendants, and to pay them the sum of 1750 dollars, and to let them

take the ship. The company could not have contemplated this claim at the time of making that agreement; if they did, it was improper to conceal it.

*L. Williams*, for the plaintiffs, to show what kind of loss or expense would subject the ship and cargo to contribution in general average, cited *The Copenhagen*, 1 Rob. Adm. Rep. 293, 294 ; Abbott on Shipping, *pt.* 3, *c.* 8, § 5, 7 ; and he contended that it was for the mutual benefit of both parties to have the ship removed to a place of safety, as the cargo was liable to deteriorate in the situation in which it lay. The expenses were incurred to enable the ship to prosecute her voyage. 1 Phil. Ins. 338.

The evidence to prove that the iron might have been saved for a smaller sum than the plaintiffs demand, was rightly rejected. The bargain was made with Delano and others *bonâ fide*. One of the defendants was a director of the insurance company, and, as an agent for other persons, he ought to have objected to the offer, if it was too high.

The ship was not in the power of the defendants, either actually or constructively. They gave notice that she was lost, and offered to abandon. At the trial some stress was laid on the fact of her being near shore, to exempt the cargo from being liable to general average, but the case of *Birkley* v. *Presgrave*, 1 East, 220, shows that there is no weight in that argument. The proper question is, whether the expenses were incurred for the general benefit. *Heyliger* v. *New York Firem. Ins. Co.* 11 Johns. R. 85 ; Stevens on Av. 23 : Caines's Lex Merc. 233.

It is said that only the iron saved by the plaintiffs ought to contribute in general average ; but as the defendants were enabled to save some of the rest, in consequence of the exertions of the plaintiffs' men in pumping &c., it is equitable that this part should contribute.

It is said that the defendants had a right to save the cargo without any regard to the saving of the ship. Suppose that there are fifty shippers ; if each one has a right to go on board to save the particular articles belonging to himself, the vessel would be crowded. This would interfere with any general effort to save the ship and cargo. As soon as goods are

shipped, a community of peril commences between the ship and cargo, and both become liable in a case like this to general average. Has a shipper of a casket of jewels a right to take it out of the vessel, and to say that the owner of a bulky article shall alone be liable to general average? This would be a dangerous principle, and one which is not to be found in any of the books.

The opinion of the Court was delivered at the following April term, at Taunton, by

PARKER C. J. This case presents a question which we do not find to have been decided in this State, in New York, or in England; and what is quite as remarkable, on inquiry among the underwriters of the city of Boston, it appears that it is considered a new question by them, cases of the kind either not having occurred, or having been settled without dispute, upon principles of compromise. We must therefore now settle the question, without precedent or practice to guide us, and must be governed by those principles which will be most conformable to analogous cases in the law merchant.

[Here the Chief Justice stated the facts in the case.]

It was objected by the defendants, that admitting them to be liable to contribution, they ought not to be held to this sum of 2,600 dollars, which they said was extravagant; they having evidence that the business might have been done for a much smaller sum: but it was rightly decided, that as there was no evidence tending to show that the bargain was not made *bonâ fide*, and as a fruitless attempt had been before made to raise the vessel, it not being suggested that there was any fraudulent or sinister view in making this contract, all parties to the contribution were bound by the sum agreed on. *Welles* v. *Gray*, 10 Mass. R. 42.

It was also objected that this was not a case for contribution, because the cargo was within the reach and power of the owners, and they were actually employed in removing it to a place of safety. But this point was rightly decided, at the trial, for the plaintiffs, in relation to the cargo remaining on board when the vessel was raised and brought to the wharf; for this was the means of saving that part of the cargo, and it was by consent of the defendants, that those who saved

the vessel might also try to save the iron ; nor could it be otherwise saved but by expense to the defendants, the amount of which cannot now be ascertained. Besides, the general principle, and a very just one, is, that when a vessel shall be accidentally stranded, the expense of getting her off, so that she may proceed on her voyage, shall be borne proportionably to its value by every thing on board, as well as by the vessel. It is laid down in Mr. Phillips's very valuable treatise on insurance, *vol.* 1, *p.* 363, § 12, that " as much of the cargo on board at the time of making a jettison or other sacrifice for the general safety, as finally arrives at the port of delivery, or comes to the use of the owner, contributes in general average." And this seems to be the tendency of the authorities which he cites in that section. The expense of raising a stranded vessel is a sacrifice for the general safety. The case in 11 Johns. R. 85, was very similar to this case. The vessel was bound from St. Croix to New York, and was stranded on the coast of New Jersey, and small vessels and lighters were sent down to endeavour to *save the vessel and cargo.* The cargo was saved, but the vessel lost. It was held, that this was not to be considered in the light of transshipping, the expense of which ought to be borne by the ship only, but as a case of general average, the expense having been incurred for the joint benefit of all.

Mr. Phillips, under the head of *General Average, vol.* 1, *p.* 338, says — " The expense of discharging the cargo to get a vessel afloat that has been accidentally stranded, and that of reloading the cargo, and the other expenses requisite to enable the vessel to proceed on the voyage, except that of making repairs, are in practice brought into general average, where the vessel after being got off proceeds with the same cargo." If this is the case, and upon inquiry among the underwriters of Boston, we find it to be so among them, it is the law ; for in cases of mercantile engagements, or in the construction of mercantile contracts, a general, practical construction, which opposes no principle of law, but is agreeable to equity and fair dealing, has the force of law, the parties to such contracts always acting in reference to well established and general usage. Mr. Justice *Sewall,* dis-

tinguished for his knowledge of the law merchant, in the case of *Clark* v. *United F. & M. Ins. Co.*, 7 Mass. R. 369, says, in relation to the subject of insurance, "For rules to govern in these inquiries, there is a more than ordinary reference to established usages ; and these, when ascertained, and found to be suitable applications of general principles, or not inconsistent with them, or with the tenor of the contract to be explained and enforced, are considered as authoritative upon the parties." We therefore find no difficulty in deciding, that when a vessel is accidentally stranded in the course of her voyage, and by labor and expense is set afloat, and completes her voyage with the cargo on board, the expense bestowed for this object, as it produces benefit to all, so it shall be a charge upon all, according to the rules of apportioning general average.[1] This point seems not to have been directly settled by the English courts, and to have been settled different ways in some of the foreign commercial countries, as will appear by Mr. Phillips's book, in the place before referred to, and the several authors he has cited in the margin.

It was argued by the defendants' counsel, that the ship had arrived, and that the cargo was at the disposal of the owners and within their reach and control ; but the facts do not support the argument : the place where the vessel struck being nine miles from the place of mooring, which would be the termination of her voyage, and she having in no sense arrived at her port of delivery. Had the cargo been lost in transporting it from the ship, or in the ship, to the wharf in New Bedford, without doubt underwriters upon it, if it had been insured, would have been answerable for the loss.[2]

But we think the plaintiffs' claim for contribution on that part of the cargo which had been taken from the vessel, at the expense of the defendants, before the contract was made under which the vessel was raised and brought into harbour, as untenable as the defendants' position, that the part which

<div style="text-align: right">Bedford<br>Com.Ins.Co<br>v.<br>Parker.</div>

---

[1] See Stevens and Benecke, by Phillips, 138 – 141 and note (a) ; 2 Phil. Ins. 237.

[2] 1 Phil. Ins. 175, 176 ; Hughes's Ins. 173 ; *Rucker* v. *Lond. Ass Co.*, 2 Bos. & Pul. 432, note

Bedford Com.Ins.Co. v. Parker.

remained on board should not be held to contribute. No case has been discovered by the counsel or the Court, which extends the doctrine of contribution so far, and the inquiries we have made of underwriters satisfy us there is no usage to sanction such a claim. The principle of contribution is, that every thing which is saved by common expense and la-bor, shall pay that expense in proportion to its value. It cannot be said that the iron taken from the vessel by the owners, before the contract was made under which the ves-sel was saved, was saved by means of the successful execu-tion of the contract. It might with more fitness be said, that relieving the vessel from so great a proportion of the weight of her cargo was an efficient cause of her final res-cue, and for this reason the expense of saving this iron should be made a subject of average ; but this was not done with a view to save the ship, but was an independent act of the owners of the iron, and must therefore bear its own ex-pense.[1] The ship was supposed to be wrecked ; the owners of the cargo had a right to save as much of it as they could, and ought not to be held to pay, on account of what was saved, any part of the expense which subsequently occurred. Difficulties have been started as resulting from an applica-tion of this doctrine in cases differing from the one before us. It is said that great disorder and confusion, and perhaps increased danger, will be the consequence of allowing every freighter of goods, when a vessel is stranded, to hurry off his particular goods which may be easily come at ; and that it would be throwing an undue burden upon the own-ers of those goods which may be so situated that the owners cannot rescue them. No such difficulty happened in this case ; on, the contrary, what was done by the owners of the cargo facilitated the final saving of the ship. Where a con-trary effect would result from such an act, the legal conse-quence may be different ; for it peculiarly belongs to con-tracts of this nature, that apparently slight differences of facts may have an important bearing on questions relating to them. Had another person been the owner of the iron

---

[1] See *Sheppard* v. *Wright*, 1 Show. P. C. 18, Abbott on Ship. (Story's Ed.) 346; *Lewis* v. *Williams*, 1 Hall, 430; *Eppes* v. *Tucker*, 4 Call, 346.

<div style="float:right">Bedford<br>Com.Ins.Co<br>*v.*<br>Parker.</div>

emaining on board the vessel, being in the bottom of the hold, and therefore very difficult to be taken out, he would have no just ground of complaint against the defendants for removing so much of the cargo as enabled the 'underwriters on the ship to raise her, and thus to save his iron, which might otherwise have been lost.

It is evident that the plaintiffs themselves considered the defendants as acting independently of them in saving the iron, for it appears by the report that they refused to pay any of the men who were employed by the defendants.

The defendants being, according to this opinion, liable in this action for a due proportion of the sum paid for raising the ship and bringing her safe to the wharf, according to the value of the iron which remained on board and was saved with the ship, assessors must be appointed to ascertain the sum due ; and they might estimate the value of the ship without regard to the sum stated in the policy as her value ; it being settled, that in adjusting general average or contributions no distinction is to be regarded between a valued and an open policy.[1]  *Clark* v. *United F. & M. Ins. Co.*, 7 Mass. R., 365.  But it not having been suggested that the value taken in the policy was not the true value, that may be taken as the basis of the adjustment,[2] making a deduction of the diminution of her value by the stranding, which has been agreed by the parties to be 1750 dollars.[3]  If the plaintiffs should claim any thing on account of the labor of their men upon the 40 tons of iron, which were taken out of the ship before she was weighed, as there were mutual aids by the parties of men belonging to the plaintiffs and defendants respectively, they may be equitably set off against each other as far as they will go.

---

[1] 2 Phil. Ins. 253, 254 ; *Allegre* v. *Insurance Co.*, 6 Harr. & Johns., 408. See the reasoning upon this doctrine in 1 Phil. Ins. 312, *et seq.;* 2 Phil. Ins. 213 ; Stevens and Benecke, by Phillips, 48 – 53 and note (a).

[2] See *Winn* v. *Columbian Ins. Co.*, 12 Pick. 284 ; *Wolcott* v. *Eagle Ins. Co.*, 4 Pick. 429 ; *Coolidge* v. *Gloucester M. Ins. Co.*, 15 Mass. R. 344 ; *Lewis* v. *Rucker*, 2 Burr. 1167 ; *Goldsmid* v. *Gillies*, 4 Taunt. 803 ; *Tunno* v. *Edwards*, 12 East, 488 ; *Forbes* v. *Aspinwall*, 13 East, 323 ; *Mar. Ins. Co.* v. *Hodgson*, 6 Cranch, 220 ; *Peele* v. *Mer. Ins. Co.*, 3 Mason, 71 ; *Rickman* v. *Carstairs*, 5 Barn. & Adolph. 651.

[3] See Stevens and Benecke, by Phillips, 211 – 215, 252, 253.