By the Court, Bosworth, Ch. J.
The plaintiff’s proposition is that, as the cause of the loss" was a general average sacrifice, the case is taken out of the exception contained in the memorandum clause, and that he is entitled to recover the insured value of the apples jettisoned, (viz. $1428 for 476 barrels at $3 per barrel,) and also the sum of $448 for damage to the 224 barrels delivered.
The defendants’ proposition is, that the loss is partial, and is controlled by the memorandum clause. That, it not being a case of absolute total loss, and there being no abandonment, only the actual damage can be claimed ; and that the actual damage is measured, as to the goods jettisoned, by the value thereof at the port of delivery and specified in the general average statement, and as to the residue of the apples, by the actual damage thereto, which is the sum they were compelled to contribute in general average. That these losses, or the whole of this damage, has been made good to the plaintiff by the contributions in general average received by him or his agents, except the small sum of £2, 15, 5, sterling, or as the general average statement shows, of £2,10, 5.
Both parties concede that there is a loss for which the defendant is liable, but they differ as to the measure of the defendant’s liability.
I think it may be considered settled that a plaintiff is not entitled to recover in case of an injury to memorandum goods, merely because they were injured, and there was a general average sacrifice in the course of the voyage. And also that he may recover in general average where there is a loss upon his goods by a general average sacrifice.
"Whether, in the latter case, he is to recover his whole actual damage, to be ascertained by the rules applicable to articles not included in the memorandum clause, or whether the damage he can recover is to be measured by the difference between the sum which they justly contribute, and the sum which they are justly contributed for in general average, is the important question in this case.
The usual memorandum clause in the English policies is *494 . that, fruits, &c. “are warranted free from average unless general, or the ship .he stranded.” In the policy before us, fruits, &c. “are warranted by the assured free from average, unless general.”
In Wilson v. Smith, (3 Bur. 1550,) in 1764, it was decided that insurance free from average unless general, does not extend to damage to the goods in a storm. The storm, which made it necessary to cut away and leave the cable and an anchor of the ship, damaged the cargo, which was wheat. But it was not damaged by the act of cutting away and leaving the anchor and cable, or as a direct or remote consequence of that act. Lord Mansfield held that “ the insurer is liable to all losses arising from the ship being stranded, and in all cases where there is a general average; but all other partial losses are excluded by the express terms of the policy. That the word unless means the same as ‘except,’ and is not to he construed as a condition, in the sense that the counsel for the plaintiff would put on the word ‘ conditions,’ which was that, £ if either of the two specified conditions should happen, (if either the ship should be stranded, or any thing should happen which created a general average,) then the warranty, to be free from average, was thereby discharged/ That the words, ‘free from average, unless general,’ can never mean to leave the insurers liable to any particular average.”
In Burnett v. Kensington, (7 T. R. 210,) in 1796, the opinion of Lord Mansfield in Wilson v. Smith was. much, commented upon, and his view, that, in a case of stranding, only the damage caused by the stranding could be recovered, was overruled ; and after full argument it was held that, if a ship be stranded, the insurer is liable for an average loss arising from the perils of the seas, though no part of the loss arose from the act of stranding. The court treated the words, “ or unless the ship be stranded,” as a condition, and where that event happened, that the warranty was ■ discharged. But Laurence, J. in his opinion, says : “How the words of the exception are not warranted free from average ‘unless there be a general average, or unless the ship be stranded)’ but *495 warranted free from average, ‘unless general, or the ship be strandedtherefore, as there is a difference in the expression of these two exceptions, perhaps it may be considered as a condition as applied to the stranding, though it be not a condition as applied to general average.” As he was discussing the exceptions applicable to the case of stranding, and only expresses himself •with: a, perhaps, as to the other exception, the true meaning of which was not involved in the judgment, the obsei-vation quoted may not be very material, in the decision of the case before us.
In Jamson et al. v. Ralli, (36 Eng. L. and Eq. 198,) where the policies contained the clause, “ warranted free from average unless general, or the ship be stranded,” and linseed, in bags, was shipped, it was held, (first,) that in the absence of any separate valuation, or any other stipulation in the policy showing that it was intended to distinguish one portion of the seed from another, and to make a separate insurance upon each portion, as well as a joint one upon all, the policy was on the whole of the seed; and (second) that although the seed was packed in packages, each capable of a distinct valuation, and some of the packages were totally lost, yet, as the rest of the. packages arrived safe, the loss was a partial loss only of the subject matter insured, arid the underwriters were protected by the ordinary memorandum, there being no general average or stranding, and were not liable as upon a total loss of some of the packages.
The ship sailed from Calcutta with 2688 bags of linseed on board ; 505 bags were thrown overboard, in a hurricane, to-lighten the ship ; when the ship arrived at the Cape of Good Hope, 1023 bags were found to be rotten and worthless, and most of them were thrown into the sea, and the rest of them were sold for a few shillings, and had it been sent on would have lost the character of linseed before arrival in England. The remaining 1160 bags arrived safe. There was no abandonment, and the ship was not stranded. The plaintiffs sought to recover for the 1023 bags "as a total loss.
The opinion of the court states that no question arose as to *496 the 505 hags jettisoned. (Id. 202.) There is no fact in that case, as in this, that it appeared that the damage to the 1023 bags was caused by a sacrifice which created a general average.
The court, after criticising and explaining Davy v. Milford, (15 East, 559,) and overruling it, so far as it was a judgment against the underwriters, conclude their opinion thus : “We are of-' opinion that where memorandum goods of the same species are shipped, whether in bulk or packages, not expressed by .distinct valuation or otherwise in the policy to be separately insured, and there is no general average, and no stranding, the ordinary memorandum exempts the underwriters from liability for a total loss, or destruction of part only, though consisting of one or more entire packages, and though such package or packages be entirely destroyed, or otherwise lost by the specified perils.” (Id. 211, 212.) That case holds the rule as it was declared in Wadsworth v. The Pacific Ins. Co., (4 Wend. 33,) but does not seem to decide any thing controling in the case before us.
Mr. Arnould, (vol. 2, p. 857,) says, “it was decided that the true construction of the words 6 warranted free of average unless general,’ was that the underwriter is exempted by the memorandum from liability for any thing less than a total loss, ■ except it be of the nature of general average, but that for general average losses he is in all cases liable.” He cites Wilson v. Smith, (supra.) What was decided, and what was said in that case by Lord Mansfield, has been already stated.
At page 859, in a summary of his conclusions as to the general meaning of the whole, memorandum, he states its meaning to be, (1st.) “ That all losses, in the nature of general average, are to be paid by the underwriter, as though the policy did not contain the memorandum,” and (3d.) “if the ship be stranded while the memorandum articles are on board, then the underwriter is liable to, pay all particular average losses, whether caused by the stranding or not, just as though the memorandum did not exist.”
Under the construction for which the defendant contends, the insurer’s liability, unless the loss be "total, is, practically, *497 nominal. For, although there he a general average sacrifice by a destruction of a part of the apples, and though the residue be injured by the act of sacrificing the part totally destroyed, the assured, practically, recovers nothing for the physical destruction of the apples jettisoned, and certainly nothing for the physical injury to those carried to the port of delivery. For the purposes of the general average statement, the apples jettisoned are deemed to have arrived sound, and are valued at their market value at the port of destination, (however much that may fall below the insured value,) after deducting freight and other specific charges, and the net value as thus ascertained is the sum or value on which they contribute and are contributed for. And though the apples be totally destroyed, as a voluntary but necessary sacrifice, all the assured could recover would be the sum which they paid by way of contribution, if he had received their value, as thus determined in the general average statement, diminished only by the sum which they must contribute.
And as cargo damaged, but not totally destroyed, only contributes on its net value at the port of destination in the condition in which it arrives, ascertained as before stated, it follows that the greater the damage to it the less its value, and the smaller the contribution it is liable to make, and the smaller the loss for which the insurer is liable.
In the present case, the two hundred and twenty-four barrels of apples which arrived are valued at £6, as their contributory value, and although insured at $3 per barrel and damaged by the general average sacrifice to the éxtent of one quarter of their value, the loss for which the insurer is liable can not exceed six sixty-sixths of £2, 10s, 5d.
To hold that the insurer of memorandum articles is only liable to reimburse a general average contribution, is to place the assured in a worse position, in respect- to the extent of his claim against the insurer, where his goods are damaged or destroyed by a general average sacrifice, than where they are physically uninjured and the only loss the owner suffers is the payment he makes as a general average contribution.
*498 In Maggrath & Higgins v. Church, (1 Caines, 196,) it was held by Kent, J. that all' damage immediately arising from a jettison is to be contributed for, though it happen to perishable articles, which are enumerated in the .memorandum, and remain in specie. Kent, J. says : “ The corn being damaged by the cutting away of the mast, is to be considered equally with the mast a sacrifice for the common benefit; a price of safety to the rest; and it is founded on the clearest equity that all the property and interest. saved ought to contribute their due proportion to this sacrifice. The plaintiff is, therefore, entitled to recover as for a general average, for the loss sustained by the injury done to the corn.” Lewis, Oh. J. expressed great doubts “ whether the injury received by the corn from the jettison of the mast and consequent irruption of the sea water, could entitle it to a general average as between insurer and insured. He was strongly inclined to think it within the-spirit and meaning of the terms of the exception ; the object and design of which was to avoid and shut out, between the parties to the policy, every question on the cause of injury to the corn, where it might equally arise from the perishable nature of the commodity, as from external causes.” Livingston, J. gave no opinion, and the plaintiff had judgment, according to an agreement of the parties at the foot of the case, as for a total loss.
In Saltus v. Ocean Ins. Co., (14 John. 138,) it was held that where corn was thrown overboard for the preservation of • the ship and lading, in a storm, by which the residue was greatly deteriorated, and, the vessel having put into a port of necessity, was found to be unfit to be reshipped, and was sold, it was held that the insured was entitled to contribution for the corn thrown overboard, but the insurer was protected by the memorandum from any loss on what remained in specie, although it had been reduced by sea damage, to less than half its value. Tates, J. in delivering the opinion of the court, says, that “No claim can be sustained for a total or a partial loss on the cargo policy. It consisted of perishable articles included in the memorandum, and it was not lost, excepting *499 the articles thrown overhoard to lighten the ship. The defendants, therefore, are only liable to pay their portion in contribution towards the value of the articles which constitute the jettison; a principle repeatedly recognized by this court. (1 John. Cas. 226. 1 Caines, 196. 3 id. 108.”)
Where memorandum articles are damaged by a general average sacrifice, but arrive in specie at the port of destination, if the underwriter is not liable for any partial loss except for general average, and if the loss in the present case, under the rule declared in Wadsworth v. Pacific Ins. Co., (4 Wend. 33;) and Jamson et al. v. Ralli, (36 Eng. Law and Eq. 198,) is only a partial loss of the whole, and there can be no recovery as for a total loss of the part jettisoned, it would seem to follow that the underwriter is only liable to the plaintiff in respect to his general average contribution, as owner of the apples.
That such is the nature and extent of his liability, seems to me to be in harmony with all the views upon this subject declared by the courts of this state ; and to be virtually decided by them.
As to the extent of the underwriter’s liability:
Arnould, (vol. 2, p. 950, § 10,) states that underwriters never contribute directly to general average losses; they are only bound to reimburse the assured their proportionate of rateable amount of his contrihution. They are not bound to reimburse him the full amount of his contribution, but only that proportion of it which the value of his interest as insured, bears to its value as estimated for the purposes of contribution. In other words, whatever per centage on the contributory value the assured may be compelled to pay in general average, the like per centage on their insured value must be paid to him by the underwriter.
The plaintiff’s loss in general average has been satisfied by general average contributions which he has received, except the sum of £2, 10s, 5d, which he paid in contribution on the seven hundred barrels of apples, at the contributory value of £66. Whatever per centage £2, 10s, 5d, is of £66, the plaintiff *500 would be entitled to a verdict, according to a strict and technical application of the rule above stated, for such sum as is a like per centage of .$2100, the insured value of the apples.
But it is obvious that the insured value may so largely exceed the contributory value, that an application of this rule would make the insurer liable in such a case for a larger sum than the assured was compelled to contribute in general average.
The rule seems to be that where the contributory value' exceeds the insured value, whatever is paid in such a case in contribution, by the excess of the contributory value over the value in the policy, is paid by the assured. On this proportion, he is his own insurer. For whatever is paid on a contributory value' not exceeding the value in the policy, the assured is indemnified on the proportion insured. (2 Arnould, 950, § 10. Clarke v. United F. and M. Ins. Co., 7 Mass. R. 365.)
This rule, applied to the facts of this case, entitles the plaintiff to a verdict for £2, 10, 5, or whatever the sum is which he paid in general average contribution. This exonerates the insurers from all liability for a partial loss, as a partial loss, and makes them liable to the plaintiff for the actual general average loss; the insured value of the memorandum articles being greater than their contributory value.
The case will be-reconstructed so as to show that the plaintiff, by order of the court at the trial, had a verdict for such sum as will be correct according to the rules above stated, and that such exceptions were there taken, by either party, as will enable him to present the questions raised by the propositions here decided and the application made of them in this disposition of the action.