# Wheeling.

## BRADLEY *et al.* v. EWART *et al.*

Decided November 19, 1881.

*(PATTON, JUDGE, ABSENT.)

1. Where the plaintiff in error himself has done some act, since the judgment complained of was rendered, that would in law prevent him from obtaining any fruits of a writ of error, and the matter is in such form, that the Appellate Court can act upon it, his writ of error will be dismissed.

2. But where the motion to dismiss is founded upon an alleged forfeiture of defendant's title after judgment in an ejectment-case, the motion will be overruled.

3. In an action of ejectment involving the title to the land in controversy, if the plaintiff recovers, it must be upon the strength of his own title, and he cannot be aided by the weakness of the title of his adversary.

4. If land is entered on the assessor's books in the name of the party, who by the record of deeds appears to be the owner of the land, and by mistake or otherwise the land is placed on said books in the name of the former owner, and the taxes are in fact paid by the owner in his own name, and the land is returned delinquent for the non-payment of the taxes for the same years in the name of the former owner and sold in his name for the non-payment of such taxes, and the purchaser at such sale procures a deed from the clerk of the county court for such land, the sale is illegal, and the deed null and void.

5. Section 27, chapter 31 of the Code of 1868, does not apply to such a case but to cases, where the owner, who is charged with paying the taxes, has neglected to look after the land and see, that it was on the books in his own name, or where he has failed to have it put on the books in his own name, and the land in the title, under which he claims, or by mistake in his own name has been returned delinquent for taxes, which he has in fact paid. In such cases he must file his notice within five years after the deed to the purchaser has been recorded, alleging the payment of the taxes, for the non-payment of which the land was sold.

6. But if the land was improperly on the assessor's books and sold in such improper name, when the taxes had been paid by the rightful owner, the statute does not apply, and at any time in a proper case the said sale and deed may be declared illegal and void.

Writ of error and *supersedeas* to a judgment of the circuit

*Case submitted before the JUDGE took his seat.

court of the county of Raleigh, rendered at the November term thereof in the year 1876, in an action in said court then pending, wherein John D. Bradley and others were plaintiffs, and John S. Ewart and others were defendants, allowed upon the petition of said defendants.

Hon. Evermont Ward, judge of the ninth judicial circuit, rendered the judgment complained of.

JOHNSON, PRESIDENT, furnishes the following statement of the case :

In May, 1874, John D. Bradley filed his declaration in ejectment in the circuit court of Raleigh county, to recover of the defendants, John S. Ewart, Betsy Walker, Malinda Walker, Priscilla Walker, James H. McGinnis, Samuel Cantly and John A. Douglass, a tract of twelve thousand four hundred and fifty acres of land in said county. The declaration contained four counts : the *first* in the names of said Bradley and Henry Labaume, Thornton T. Labaume, William A. Labaume and Morales Labaume in their own right and as joint and several executors respectively of Peter A. Labaume, deceased ; the *second* in the name of the said John D. Bradley alone ; the *third* in the names of Thornton T. Labaume, Henry Labaume, William A. Labaume and Morales V. Labaume ; the *fourth* in the names of said Labaumes as joint and several executors of Peter A. Labaume, deceased. On the 6th day of October, 1874, "on motion of the plaintiff, John D. Bradley, the counts in the declaration in the names of W. A. Labaume, Henry A. Labaume, Thornton T. Labaume and Morales Labaume were discontinued at the said Bradley's costs." At the October term, 1875, the defendants pleaded "not guilty," and issue was thereon joined. At the same term this order appears :

"This day came the parties by their attorneys and by consent their counsel submitted the case to the court in lieu of a jury, to be heard and determined upon the pleadings and written statements and arguments of the parties signed by the counsel of the plaintiffs and defendants respectively, dated October 13, 1875, and agreed to be made part of the record ; but the parties are to have the right to furnish any of the cer-

tificates, copies or records provided for in said agreement at any time before or at the next spring-term of this court."

I will not set out in full the facts agreed, but only so much as will be necessary to the proper understanding of the opinion of the Court. It was agreed, "that on the 1st day of January, 1851, Benjamin H. Smith was seized in fee of the land in controversy"; that the land in controversy is the same land described in a deed of conveyance made by said Smith to Peter A. Labaume bearing date on the 19th day of September, 1851; that it is the same land described as a tract of twelve thousand one hundred and seventy-eight acres in a deed made by Daniel Shumate, clerk of the county court of Raleigh county, to the defendants, Ewart and others, dated September 30, 1858; that it is the same land described as a tract of twelve thousand one hundred and ninety-eight acres in a deed from Clarkson Prince, recorder of said county, to said John S. Ewart, dated October 16, 1869, certified copies of which deeds it was agreed should be filed as a part of the agreement, which was done; that it is the same land described as a tract of twelve thousand four hundred and fifty acres in a deed from said Clarkson Prince, recorder, to the plaintiff, John D. Bradley, dated March 1, 1870; that it is the same land described in a deed from John Rogers to said Ewart, dated 17th August, 1868, copies of which last mentioned deeds it was agreed should be made part of said agreement, which was done; that the land described in the deed from Clarkson Prince as recorder to John S. Ewart, dated 16th October, 1869, is the land in controversy; that said land was assessed for the year 1851 in the name of Benjamin H. Smith, and that on the 19th of September of that year said Smith, as already stated, conveyed said land to Peter A. Labaume; that said land was in the name of said B. H. Smith returned delinquent for the non-payment of the taxes due thereon for the year 1851, and that in 1855 the said land was sold by the sheriff of Raleigh county to pay said taxes, and said John S. Ewart for himself and Archibald B. Walker, as agent for Elizabeth Walker, Malinda Walker and Priscilla Walker, became the purchasers of said land, and on the 30th day September, 1858, Daniel Shumate made, as clerk of the county court of Raleigh county, a deed for said land to said purchasers, and that said deed was recorded

on the 1st day of October, 1858; that the then commissioner of revenue of said county of Raleigh did assess said purchasers with taxes upon said land for the years 1865 and 1866, and that the proper commissioner of the revenue did assess said lands for every year since the year 1858 to the present time.

They further agree, that said purchasers paid the taxes assessed against them upon the land aforesaid to the then sheriff of the county of Raleigh for said years of 1865 and 1866, when due, and that said purchasers paid all the taxes assessed against them upon said land, when due, for every year since 1858 to the proper sheriff. They also agree, that the tax-tickets made and signed by Lewis Hall, who was sheriff of said county of Raleigh for the years 1865 and 1866, shall be considered part of the agreement aforesaid. They further agree, that the commissioner of the said county of Raleigh assessed Peter A. Labaume with the taxes upon seven thousand acres, part of said land in controversy, for the years 1854, 1855, 1857 and 1858, and said Smith with the residue of said tract during the years last aforesaid, and that the taxes so assessed were not paid by either Labaume or Smith; that said lands were returned delinquent in the names of said Labaume and Smith for said years, and said lands were by the sheriff of said county on the 24th day of September, 1860, sold for the non-payment of said taxes, and the defendant John S. Ewart became the purchaser, and that on the 17th day of August, 1868, John Rogers, as deputy recorder of said Raleigh county, made said Ewart a deed for said lands, which deed was promptly recorded.

They further agree, that Clarkson Prince, who was then recorder of said county, on the 16th day of October, 1869, "did make, sign, seal, acknowledge and deliver to said John S. Ewart a deed for the land in controversy," a copy of which deed is made a part of the said agreement, which deed recites the same sale as is recited in the deed from John Rogers, deputy recorder, above referred to. This deed, as the agreement shows, was recorded on the 18th of October, 1869. They further agree, that said land was entered on the commissioner's land-books of Raleigh county for the years 1865 and 1866 in the name of Peter A. Labaume; and was assessed for taxes

76

in these two years in his name and was in said name returned, by the sheriff of said county delinquent for the non-payment of taxes thereon in said name for the years 1865 and 1866, and was sold by the sheriff of said county on the 25th day of October, 1867, for the non-payment of said taxes for said years 1865 and 1866 in said name of Peter A. Labaume, and the plaintiff, John D. Bradley, became the purchaser thereof, and on the 1st day of March, 1870, Clarkson Prince, recorder of said county, as such made a deed for said land to the plaintiff, John D. Bradley, which deed was recorded on the 2d day of March, 1870.

There is in the agreed facts a claim of adversary possession by the defendants with the facts tending to show, that the possession was not sufficient to give title to defendants. There is this further clause in the said agreement : "But whereas it is possible errors and omissions may have been committed in the foregoing statement, it is distinctly understood and agreed between the parties, that each party shall be entitled upon the trial of the above case to correct any such admissions or recital made against him, or supply any such omission, as he may desire ; but it is further agreed, that such correction or supplement shall be made by record-evidence only, certified by the proper officer, and when such certified copy of such record be produced, it shall be part of such agreement. By record-evidence is meant the entries relative to the land in controversy or any part thereof made by the proper officers between the 1st day of January, 1850, and the 1st day of January, 1871, in books of the commissioners of the revenue of Raleigh county, the sheriff's lists of delinquent lands, the sheriff's lists of delinquent sales, and the auditor's list of land certified to the sheriff for sale, and the orders of the court relative thereto, and also sheriffs' or other officers' receipts for taxes on the land in controversy or any part of it. It is further understood, that the above admissions are made subject to all legal exceptions by either party for irrelevancy or insufficiency to sustain the issue. By further agreement of the parties this case is submitted to the court instead of a jury for decision upon the evidence and facts hereinbefore stated and provided for in this agreement and none other."

Several orders of the court entered in the case show the

filing of such papers, as were provided for in the said agreement.   Exception is taken to the two tax-tickets paid by the defendants to sheriff Hall in 1865 and 1866, because, it is claimed, they show on their face, that they were tickets of prior years and had been changed in date, and said Hall was dead and could not contradict them.   But there is no evidence in the record other than the tax-tickets themselves relative to their genuineness.

At the November term, 1876, of the circuit court of Raleigh county upon the said facts agreed judgment was rendered for the plaintiff, John D. Bradley, against the defendants to a certain portion of said land by metes and bounds supposed to contain seven thousand acres; and the court further found, that the said plaintiff, John D. Bradley, "hath title to and is seized in fee of said land," and gave judgment for costs against the defendants, and awarded a writ of *habere facias possessionem* against the defendants in favor of the plaintiff.   To this judgment a writ of error and *supersedeas* was granted by this Court.

*Price & Preston* for plaintiff in error relied on the following authorities : Code, ch. 90, § 4 ; 6 Binn. 454 ; Rev. Stat. N. Y., part 3, ch. 5, § 3 ; 2 Gratt. 319 ; 11 W. Va. 262 ; 7 Wheat. 59 ; Adams Eject. 32 ; 6 Wheat. 580.

*J. H. & J. F. Brown* for defendants in error relied on the following authorities: 2 H. & M. 67 ; 10 W. Va. 115 ; 4 U. S. Dig. Sup. 636, § 164 ; *Id.* 646, §§ 456, 463 ; 8 Watts & S. 391 ; 7 Mon. 407 ; 5 Watts & S. 188 ; 9 Gill & J. 439 ; 5 Leigh 109 ; Wright 547 ; 6 Yerg. 325 ; 5 Pick. 78 ; 8 Port. 546 ; 9 Dana 193 ; *Id.* 59 ; *Id.* 273 ; 5 Miss. 501 ; 5 Blackf. 267 ; 1 Scam. 131 ; *Id.* 45 ; 13 Ohio 131 ; 4 Min. Inst. pt. 1, pp. 866, 875 ; 1 Leigh 284 ; 13 Gratt. 257 ; Story Pl. 365, 368, 369, 370, 373, 378 ; 5 Coke 396 ; 11 Mass. 379 ; 5 Pick. 213 ; 1 Green 264 ; 3 Watts & S. 114 ; 4 W. Va. 186 ; 10 W. Va. 559 ; 14 W. Va. 382 ; *Id.* 616 ; 6 W. Va. 126 ; 2 Mass. 147 ; 3 H. & M. 251 ; 3 Mod. 135 ; 2 Cro. 117 ; Bart. Pr. 397 ; 1 Rob. (old) Pr. 662 ; 2 H. & M. 268 ; 2 Rob. 56 ; 7 Leigh 231 ; *Id.* 22 ; 5 How. (Miss.) 636 ; 2 Blackf. 128 ; 7 W. Va. 707 ; *Id.* 114 ; 5 W. Va. 402 ; 12 W. Va. 689 ; Acts 1872–3, ch. 117, § 32 ; 1 Sug. Pow. 264, 265, 266, 267 ; **4**

Wheat. 77 ; 2 Wall. 640 ; 6 Wall. 714; 7 J. J. Marsh. 625 ; Ror. Jud. Sales, § 867 ; Code Va. (1849) ch. 37, § 14 ; *Id.* ch. 36, § 19 ; 10 Gratt. 436, 437 ; .13 W. Va. 278 ; 9 Gratt. 194 ; 19 Pa. St. 439 ; 23 Miss. 585 ; 53 Barb. 29 ; 15 Ohio 467 ; *Id.* 84; 59 Pa. St. 436 ; 4 Watts 465 ; 7 Barr 81; 1 W. Va. 24 ; Code, p. 73, § 13 ; Acts (1863) p. 68 ; 3 Wash. C. C. 558 ; Code, ch. 31, § 23 ; *Id.* §§ 10, 11, 12, 19 ; 4 Quar. L. Journ. 28 ; Bright. Fed. Dig. p. 829, §§ 46, 47 ; Ror. Jud. Sales, § 375, *Id.* §§ 442, 443 ; 8 Metc. (Ky.) 355 ; 1 Seld. (N. Y.) 497 ; 7 Tex. 240; 28 Ala. 164; Acts 1866, p. 8, §§ 11, 15 ; Acts 1863, p. 174, § 86 ; *Id.* p. 231, § 18 ; Ror. Jud. Sales, § 953 ; 10 Gratt. 469 ; 14 Gratt. 39; Code, ch. 35, §§ 97, 98, 99 ; 10 Gratt. 499 ; 9 Gratt. 40 ; *Id.* 323; *Id.* 379 ; 6 Gratt. 107 ; 9 Gratt. 204 ; 2 W. Va. 558 ; 14 W. Va. 561 ; 9 Wheat. 541 ; 4 Munf. 473 ; Adams Eject. 57, note 2 ; 14 Gratt. 60 ; 2 Hayw. 294; 5 Harr. & J. 345; *Id.* 264 ; 10 Mass. .151 ; 2 Harr. & J. 87, 94, 112 ; 3 Searg & R. 507 ; 5 Litt. (Ky.) 210; 5 Pet. 158; 3 McLean 431 ; 14 W. Va. 731 ; 10 Gratt. 400 ; 11 Gratt. 572; 11 Ala. 1028· *Id.* 271 ; 5 Pet. 151 ; 22 Ill. 401 ; 7 Ga. 387 ; 17 Ind. 303 ; Peck (Tenn.) 382; 14 W. Va. 708.

JOHNSON, PRESIDENT, announced the opinion of the Court :

In this Court the plaintiff moved to dismiss the writ of error and *supersedeas,* on the ground, "that after the judgment, and before the writ of error was granted, the interest of the defendants, if any they had in the land in controversy, had been divested by forfeiture and vested in the State and enured to the benefit of the plaintiff, Bradley." In support of this motion written evidence and affidavits were filed. Many authorities are relied upon by counsel for the defendant in error to sustain this position ; but an examination of nearly all these authorities will show, that they do not apply to motions to dismiss a writ of error, but are authorities to show, that the judgment or decree should be affirmed, because no error appears in the record to have been committed *to the prejudice* of the plaintiff in error or appellant. In *Clark* v. *Johnston,* 15 W. Va. 804, this Court held, that it is not sufficient to reverse a decree, that there is error in it ; the error must be prejudical to the appellant, or it will not be reversed on his application.

To the same effect are many of the authorities cited by counsel for defendant in error. But there is a wide difference between a motion to *dismiss* a writ of error for reasons occurring after the judgment, and a refusal to *reverse* a judgment because no error appears in the record to the prejudice of the plaintiff in error. Where the plaintiff in error himself has done some act, since the judgment complained of was rendered, that would in law prevent him from obtaining any fruits of a writ of error; and the matter is in such form, that the Appellate Court can act upon it, his writ of error will be dismissed. See Bart. Pr. 397 and cases cited.

In *Rider* v. *The Nelson & Albemarle Union Factory*, 7 Leigh 154, a bill filed against a public company incorporated for a limited time was dismissed by the court of chancery; the plaintiff appealed from the decree, and pending the appeal the charter of the company expired by limitation. It was held, that the appeal must abate. But in *The Bank of Alexandria* v. *Patton et als.*, 1 Rob. 499, a bill in equity against a corporation was dismissed at the hearing; an appeal was taken from the decree, and pending the appeal the charter of the corporation expired. A motion was made in the Appellate Court upon the authority of *Rider* v. *The Union Factory, supra.*, that the appeal abate for that cause. In opposition to the motion it was suggested, that during the existence of the corporation it made an assignment of its rights in the subject of the controversy, and it was held, that the Appellate Court might enquire, whether the fact of assignment existed, as a guide on the motion to abate, and on being satisfied of the fact might permit the case to proceed without noticing on the record the dissolution of the corporation. And the fact of the assignment not being controverted, the court refused to abate the appeal and affirmed the decree of the court below. The statute keeping corporations, whose charters have expired, in existence for the purpose of settling their business by suit or otherwise, passed since the decisions above referred to, would of course now prevent the abatement of appeals in such cases for such reason.

The motion before us does not come within the principles decided in any of the cases cited above or in any other of the many cases cited by counsel for defendant in error. This is an action of

ejectment, and the judgment was for the plaintiff, the defendant in error, "that he was seized in fee of the land in controversy." The defendants below obtained a writ of error to this Court, and the plaintiff below, the defendant in error here, seeks to defeat the reversal on writ of error by his motion to dismiss the writ, because the plaintiffs in error had lost their interest in the land in controversy by a forfeiture of their title to the State, which, the defendant in error claimed is by operation of law now vested in him, and that this forfeiture occurred after judgment and before the writ of error was granted. If there was anything in this claim, it would be impossible to try the question here. The defendants may have paid the tax, for the non-payment of which the defendant in error claimed it was forfeited. The counsel of defendant in error seems to forget, that this is an action of ejectment, in which the plaintiff's title to the land in controvery is involved. Until the plaintiff shows a good title in himself, the defendants are entirely secure. The plaintiff if he recovers in this action at all, must recover upon the strength of his own title, and he will not be benefited by the weakness of the title of his adversaries.

The motion of the defendant in error to dismiss the writ of error and *supersedeas* must be overruled.

Upon the agreed facts is the judgment of the circuit court right? This depends upon whether or not such facts show, that the plaintiff had title to the land in controversy. In deciding this question we must steadily keep in view the legal title. In an action of ejectment involving the title to the land in controversy, if the plaintiff recovers, it must be upon the strength of his own title, and he cannot be aided by the weakness of the title of his adversary. *Bailey et al.* v. *Fairplay*, 6 Bin. 454; *Chambers* v. *Swope*, 2 Gratt. 319; *Preston's heirs* v. *Bowmar*, 6 Wheat. 580; *Colston* v. *McVay*, 1 A. K. Marsh. 251; *Covert* v. *Irwin*, 3 Serg. & R. 283. This must necessarily be so. The party in possession cannot be ousted by any one except the owner of the land, where the title to the land is involved. The defendant may defeat the plaintiff by even showing an outstanding title in another, although he may have no title in himself. It is not a comparison of titles but a controversy, in which the

question is, "has the plaintiff the title to the land?" If he has not, he has no right to disturb the defendant in his possession.

The plaintiff in this case relies upon his tax-deed made to him by Clarkson Prince as recorder of Raleigh county on the 1st day of March, 1870. If that is a good and valid deed conveying, as it purports to do, the legal title in fee simple to him, he was entitled to recover in the action ; otherwise, he was not entitled to recover. It is among the facts agreed in this case, that in September, 1851, Benjamin H. Smith conveyed the land in controversy to Peter A. Labaume ; that in that year it was returned delinquent for the taxes assessed thereon, and was by the sheriff in October, 1855, sold for the non-payment of the taxes ; that the defendants became the purchasers, and that on the 30th day of September, 1858, the clerk of the county court of Raleigh county as such clerk made a deed therefor to said defendants ; that it was in said year, 1858, placed on the commissioner's books in the names of said purchasers, and they had in such names paid the taxes thereon at the proper time every year thereafter, until the case was tried ; that Peter A. Labaume was assessed with taxes on said land for the years 1854, 1855, 1857 and 1858, before it was put on the books in the names of the defendants, and that it was returned delinquent for the non-payment of the taxes for said last mentioned years, and said taxes not being paid, it was again sold in the name of said Peter A. Labaume on the 24th day of September, 1860, and purchased by the defendant, John S. Ewart, and that a deed was made to him therefor.

It also appears from said agreed facts, that somehow after this it was again put on the commissioner's books in the name of said Peter A. Labaume, and returned delinquent in his name for the taxes of 1865 and 1866, and was on the 20th day of October, 1867, sold by the sheriff of Raleigh county for the non-payment of said taxes by said Peter A. Labaume, and the plaintiff, Bradley, became the purchaser, and on the 1st day of March, 1870, the land not being redeemed, he received from the recorder of said county a deed therefor. It is also agreed that for these very two years, for the non-payment during which of the taxes assessed thereon in the

name of Peter A. Labaume, it was assessed to the defendants, Ewart and Walker, and the taxes actually paid by them, and the tax-tickets paid to the sheriff at the proper time are made part of the agreed facts. It is contended here, that the tickets show on their face, that the dates have been altered, and by *certiorari* they were produced to this Court. It was agreed by the parties, that these tax-tickets are just what they purport to be ; but if this were not so, upon inspection of the originals we are satisfied, that they have not been changed in the least.

Now then the question is presented : Could the sale in 1867 under these circumstances and the deed made in 1870 convey any title to the plaintiff, Bradley ? In *Lohrs* v. *Miller's lessee*, 12 Gratt. 452, it appeared, that H. was the owner of a tract of land in 1797. Two papers purporting to be deeds bearing date in that year, one from H. to G. and the other from G. to M., conveying this land, were by order of the proper court directed to be admitted to record and were recorded, though they were not duly authenticated. M. entered the land as his own on the books of the commissioners of the revenue; and in 1815 it was sold as the land of M., as having been forfeited for non-payment of taxes, and conveyed by the sheriff to B., who entered it on the books of the commissioner ; and it had ever since been held by B. and those claiming under him, and all the taxes charged on the land had been paid or released. In 1843 a patent was obtained for the land by L., who entered it with the commissioner and paid the taxes thereon regularly. It was held, that under the circumstances the title of the parties claiming under B. is valid, and the land was not forfeited under the Act of 1835 as the land of H. to the junior patentee, L.

Samuels, Judge, in delivering the opinion of a majority of the Court at page 458 says · "The facts, that the land since 1815 has been continually on the books charged with taxes, that it has been held under deeds duly recorded since that time, it is supposed, are of no avail; that the commonwealth has the right to draw in question the validity of each and every link in the chain of title ; that the assessment and payment of taxes on a title defectively deduced will not save the forfeiture on account of those very taxes ; but that after receipt of her dues the commonwealth may seize the land

itself in satisfaction of other and further taxes on the same land due from another person, that is to say, that she may receive taxes of the mistaken claimant and may recover the same taxes of the apparently true owner; that is, she may recover double taxes on the same land. If in any case the construction of a statute be doubtful, it is well for the court in applying the law to the facts to enquire, whether the Legislature having the same facts in its mind would have placed them under the operation of the law. If we do so in this case, and decide, that the land was forfeited, we must hold that the Legislature meant to forfeit, as for an omission to enter and correct non-payment of taxes, in a case in which the entry was in fact made and the taxes were in fact paid. * * * I am clearly of opinion, that a forfeiture in this case cannot be adjudged to have occurred without a departure from the letter and spirit of the laws; such judgment could only be sustained by making the statute rigorous and unjust in the last degree."

In *Whitham* v. *Sayers,* 9 W. Va. 671, it was held, that if deeds of record show, who is the equitable owner of a tract of land, and the assessor has taxed on his books the tract of land to the equitable owner, he ought not to tax the same land on his books to the person, who holds the legal title for the benefit of the equitable owner of the land, though the deed to such person does not on its face show, that he is not the owner of the equitable as well as the legal title, but this is only shown by a preceding deed of record; and if he do so, and the land is sold for the non-payment of such taxes, and a deed made to the purchaser, such sale is illegal, and the deed is null and void.

The land in the case at bar after 1858 ought not to have been placed on the commissioner's books in the name of Peter A. Labaume, and being on in the name of the proper parties, as the records of deeds show, in 1865 and 1866, and the defendants, Ewart and Walker, the proper parties, paying the said taxes for the said years 1865 and 1866, the State through the sheriff's sale and the deed made by the recorder could convey no title to John D. Bradley. The sale was illegal, and the deed is null and void. The State had recovered her taxes and had received them on the same title chargeable therewith, and

therefore the land was not delinquent, and the sale was illegal. The party, who claims to be the owner of land, is not bound to see to it, that his lands are not charged in some other name. If he were, it might be impossible for him to ascertain that fact, and he would have nothing whatever to guide him, and his lands might be wrested from him without his knowledge, when he was in no default whatever. If titles to land could be acquired in this way, all a man would have to do would be to have his neighbor's lands entered on the commissioner's books in the name of the vendor of such owner and let them be returned delinquent, and buy them at the sale of the sheriff, and quietly wait, until the time for redemption was gone, and procure his deed and quietly wait five years longer, if the statute applies to such a case, and then bring his action of ejectment to recover his neighbor's farm. If land is entered on the assessor's books in the name of the party, who by the record of deeds appears to be the owner of the land, and by mistake or otherwise the land is placed on the assessor's books in the name of the former owner, and the taxes are actually paid by the real owner, and the land is returned delinquent for the non-payment of taxes for the same years in the name of the former owner and sold in his name for the non-payment of such taxes, and the purchaser at such sale procures a deed from the clerk of the county court for such land, the deed will be null and void, and the sale illegal.

But it is insisted, that section 27 of chapter 31 of the Code applies to this case; and that no notice having been filed in the case within five years of the execution of the deed to Bradley alleging the payment of the taxes for the years it was claimed they were not paid, such proof could not be afterwards heard, and the tax-deed could not be affected thereby. If this were so, it could not apply to the evidence in this case, because from anything that appears to the contrary, we could not say, that such notice was not given in this case within the required five years. But does section 27 apply to a case like this? We think not. The language of the statute is:

"If the *owner* of any real estate sold for the non-payment of taxes thereon, his heirs or assigns claim, that the taxes, on account of which the sale was made, were not in arrear, he may within five years, after the deed shall have been ob-

tained and admitted to record, institute a suit in equity against the purchaser, his heirs or assigns, alleging the payment of the taxes and seeking to have the sale and deed declared void ; or he may within such time in any suit or action pending relative to the real estate, in which the payment is not alleged, give to the purchaser, his heirs or assigns, parties thereto, notice in writing of his purpose to prove the fact of such payment, or·file such notice in the case at least thirty days before the hearing or trial thereof; and having done so, may in such suit or action prove, that such taxes were paid. But unless he shall within the said five years institute such suit, or give or file such notice in a suit or action pending relative to such real estate, he shall not prove such fact, or on such account in any way question the validity of the sale or deed."

If this section will bear the construction sought to be put upon it by counsel for defendant in error, then no man is safe in the possession of his property, although he may not have been in any default whatever. He may have had his land, after he bought it, placed upon the commissioner's books, and may have paid the taxes regularly, as they became due, for years; and the assessor may by mistake have kept the same land on the books in the name of the former owner, or put it on in any other name, in which name without the knowledge of the owner it may have been returned delinquent and sold, and a deed may have been made to another or the former owner himself, if he should be the purchaser; and if the owner should not discover it, until five years had elapsed after the deed was recorded, he would loose his land. The statute cannot be given such a construction as this. The Legislature never intended such a thing. The statute applies to cases, where the owner has himself neglected to look after the land and see that it was on the books in his own name, or where he has failed to have it put on the books in his own name, and the land in the title, under which he claims, has been returned delinquent for taxes, which he has paid. In such case he must file his notice within five years, after the deed to the purchaser was recorded, alleging the payment of the taxes, on account of the nonpayment of which the land was sold. But if the land was improperly on the commissioner's books and was sold in such

improper name, when the taxes had been paid by the rightful owner, the statute does not apply to such a case, and at any time in a proper case such sale and deed may be declared illegal and void.

We do not decide in this case, that the title of the defendants to the land in controversy is good, but that as appears from the records, so far as the State is concerned, they seemed to be the owners for the purpose of taxation, and that the State under the sale to Bradley could make no title to him, because it appears, that the taxes assessed upon this same title had been properly paid by the defendants for the years 1865 and 1866, on account of the alleged non-payment of which the land was sold and purchased by Bradley. The sale and deed to Bradley were therefore illegal and void. The deed being void on this ground it is wholly unnecessary to enquire whether it is void for any other reason. We do not think, that the adversary possession of the defendants was made out in this case, and it is unnecessary to say more with reference to it.

The judgment of the circuit court of Raleigh county must be reversed with costs to the plaintiffs in error, and this Court proceeding to render such judgment, as the circuit court should have rendered on the agreed facts, doth find for the defendants, and dismiss the action at the costs of the plaintiff.

JUDGES HAYMOND AND GREEN CONCURRED.

JUDGMENT REVERSED.     ACTION DISMISSED.