# CHARLESTON.

KENDALL *v.* PHARES *et al.*

Submitted September 15, 1910.    Decided March 19, 1912.

1.    TAXATION—*Tax Sale—Erroneous Assessments.*

When taxes are paid on land under an assessment to the widow in possession thereof by an assignment of the same to her as dower, a tax sale thereof cannot be legally made under an assessment to decedent's heirs erroneously continued on the land book.   (p. 519).

2.    SAME—*Interest Subject—Dower.*

A widow in possession of land assigned to her as dower is deemed the owner thereof for the purpose of taxation.   (p. 520).

3.    SAME—*Assessment—Place of Listing.*

Payment of taxes under an assessment listed in a magisterial district where only the smaller part of the land is situated is a sufficient acquittance of the taxes to save the land from sale under an erroneous assessment listed in the district where the greater part is situated.   (p. 520).

4.    SAME—*Tax Titles—Action to Try—Time to Sue.*

A tax deed based on a sale under an assessment erroneously continuing in the name of the heirs of a decedent, when the land is assessed for taxation to the widow to whom it has been assigned as dower and the taxes are paid under the latter assessment, may be attacked notwithstanding the expiration of five years from the time the deed is recorded.   (p. 521).

Appeal from Circuit Court, Randolph County.

Bill in equity by Samuel M. Kendall against George W.

Phares and others.  From a decree for defendants, plaintiff appeals.

*Affirmed.*

*W. B. Maxwell,* for appellant.

*Talbott & Hoover,* for appellee Phares.

ROBINSON, JUDGE:

In the year 1884, John M. Crouch, of the county of Randolph, died intestate, siezed and possessed of various tracts of land.  A widow and several children survived him.  By decree in a suit in chancery, entered in 1892, three of the tracts, altogether containing 475 acres, were assigned to the widow as dower.  In this assignment of dower, however, two of the tracts, together known as the "Armstrong Land," one of 275 acres and the other of 100 acres, were considered as one tract of 375 acres.  The other tract assigned as dower, 100 acres, known as the "Lamb Land," lay adjoining the 375 acres.  The 275 acres was situated partly in Middle Fork District and partly in Valley Bend District.  All but about 35 acres thereof was in the first named district.  The two other tracts making up the 475 acres assigned as dower were situated in Valley Bend District.  Viewing the land as one body of 475 acres, one would find about 240 acres in Middle Fork and about 235 acres in Valley Bend.

From the death of John M. Crouch to the assignment of dower these lands were assessed for taxation in the name of "John M. Crouch's Heirs."  The 275 acres was for those years so assessed in Middle Fork District, wherein lay the greater part of it.  But after the assignment of the 475 acres to the widow as her dower, she had all of the same entered on the land book for taxation in her own name.  It was entered in her name as two tracts, one of 375 acres and another of 100 acres, for so it had been considered in the dower assignment.  This assessment to her, of lands lying partly in the one magisterial district and partly in another, was listed in Valley Bend District.

Notwithstanding this new assessment of the lands after the assignment of the same to the widow as dower, the former assessment of the 275 acres in the name of "John M. Crouch's Heirs," listed as hereinbefore observed in Middle Fork District,

continued on the land book. So there was clearly a double assessment of the 275 acres. Though this 275 acres was assessed in Valley Bend District to the widow holding the same as dower, since it was included in the 475 acres of contiguous land therein assessed to her, it was also carried on the land book against "John M. Crouch's Heirs" in Middle Fork District.

The taxes accruing under the assessment made to the widow were regularly paid by her for the years following that assessment. No taxes were paid under the assessment of the 275 acres in Middle Fork District for the year 1894, and for this alleged delinquency the tract was returned and advertised for sale by the sheriff. At the tax sale the plaintiff in this suit purchased 200 acres thereof. Under this purchase he obtained a tax deed for an undivided 7/10 of the 200 acres which he had caused to be surveyed out of the 275 acres. He represents that 3/10 had been redeemed. This tax deed was recorded in 1897; upon it plaintiff has based this suit.

In 1898, the 275 acres was sold and conveyed by the widow and heirs to defendant George W. Phares. From the date of the assignment of dower, the widow had been in possession thereof and had continuously paid taxes under the assessment which we have shown was made to her. Phares took possession of the 275 acres when he purchased the same and has continued in possession thereof. He had the same assessed to him, in Middle Fork District. He has regularly and continuously paid the taxes accruing under that assessment.

The original assessment in the name of "John M. Crouch's Heirs" continued on the land book after plaintiff purchased at tax sale, and some subsequent sales for delinquency thereunder were made to Lakin and DeBerry. These subsequent sales pertained to certain undivided interests in the 275 acres. But plaintiff represents that the sales to Lakin and DeBerry and the deeds made in pursuance thereof, do not affect his tax title to the interest which he claims in the 275 acres.

Almost ten years after Phares bought the 275 acres from the widow and heirs, plaintiff brought this suit demanding that the land be partitioned between him and Phares, so that 7/10 of the 200 acres named in his tax deed, being a part of the 275 acres, be set off to him free and acquit of any claim or title of

Phares, or of Lakin and DeBerry under their subsequent tax purchases.

Phares filed a cross-bill in which he asserted that the taxes on the 275 acres had been regularly paid, either by the widow during her enjoyment of the land as dower, or by himself since he purchased the same from her and the heirs; that the taxes on the tract were paid for the year 1894 under the assessment of 375 acres and 100 acres to the widow; and that, therefore, no delinquency for that year existed on which plaintiff's tax purchase and deed could legally rest. Phares prayed in this cross-bill that the tax sale and deed to plaintiff, as well as the subsequent sales and deeds to Lakin and DeBerry, based on the assessment to "John M. Crouch's Heirs," be set aside and removed as clouds on his title. Plaintiff replied specially to the cross-bill. Lakin and DeBerry made no appearance in the case.

Depositions taken show plainly that the taxes were regularly and continuously paid under the assessment to the widow, listed in Valley Bend District, and that they were paid thereunder for the year 1894. The tax receipts are exhibited. Phares proved the allegations of his cross-bill. The case, therefore, narrows down to the question whether or not the payment of taxes under the assessment to the widow rendered a sale under the other assessment in the name of "John M. Crouch's Heirs" void. The circuit court granted the relief asked by the cross-bill, and the plaintiff has appealed.

We are well satisfied that the decree, declaring plaintiff's tax purchase and deed void, is right. That the taxes have always been paid on the 275 acres, that they were paid for 1894, is beyond question. There was no delinquency, therefore, for the year as to which the sale relied on by plaintiff was made. The state had its taxes by collection under another assessment which it recognized as valid. Nor was there any delinquency for the years as to which Lakin and Deberry purchased. The state could not legally sell the land to collect taxes thereon, for it had charged the same land with taxes by another assessment than that on which the tax sales rest, and had receipted for the taxes accruing thereon. At no time had it a lien or charge for taxes which it could enforce by a sale. *State* v. *Allen,* 65 W. Va. 335.

520 KENDALL v. PHARES. [Mar. 1912.

On behalf of plaintiff, it is submitted that taxes could not be assessed against the widow, but that the assessment to the heirs was the regular one. True, after the death of Crouch, the land was properly entered for taxation against his heirs. The statute so directs. But just as properly the taxes were chargeable to the widow after the land was assigned to her as dower. She was then in possession of the freehold. The statute virtually directs that the dower lands be charged to her for taxation. Code 1891, ch. 29, sec. 37; Code 1906, ch. 29, sec. 49. It is usual and proper to charge a life tenant with taxes. "Taxes are annual payments, like interest payments upon an incumbrance, and it is therefore the duty of the life tenant to meet them regularly and promptly. Indeed it is expressly enacted in Virginia that the land shall be listed for taxation in the name of the life tenant, if there be one." 1 Minor on Real Property, sec. 219. The author refers to a provision of the Virginia Code which we find to be identical with the statute last herein cited. Moreover, we had at the date of this assessment, and still have, a more specific and direct statutory provision, in these words: "As to real property the person who, by himself or his tenant, has the freehold in his possession, whether in fee or for life, shall be deemed the owner for the purpose of taxation." Code 1891, ch. 29, sec. 40; Code 1906, ch. 29, sec. 54. This indeed says that a widow in possession of land as dower shall be deemed the owner for the purpose of taxation. It virtually says the land shall be assessed to her while she so holds it. Hence, an assessment to the heirs of land held by the widow as dower is an erroneous and irregular one. The continuance of the assessment in the name of "John M. Crouch's Heirs" was not warranted. The tax sales involved in this case were clearly based on an invalid assessment, and, under the circumstances presented, the tax sales and deeds based on it are void.

The validity of the assessment to the widow is challenged on the ground that the land was listed in Valley Bend District while the greater area of it was situated in Middle Fork District. We have observed that she had all these dower lands assessed to her in Valley Bend District. Practically half of the area was in that district. Perhaps the most valuable part lay in that district. Technically, it may be that they should have

been listed to her in Middle Fork. But if that is the fact, it cannot make plaintiff's tax deed good. Though the assessment properly chargeable to her was irregular in this particular, the irregularity cannot avail to make good the total erroneous assessment under which plaintiff bought. The state was satisfied. It accepted the taxes from her under this assessment, even if the land was listed in the wrong district. A sale under the assessment would have carried title to the tax purchaser; for, the statute expressly provides that listing in the wrong district, or listing two or more tracts as one, shall not invalidate the tax deed. Code 1906, ch. 31, sec. 25. Surely the rule should work both ways. If the assessment is good for the enforcement of taxes by a sale, it certainly is good for an acquittance by payment of those taxes. *Boggess* v. *Scott,* 48 W. Va. 316. Besides, it would seem that Code 1891, ch. 29, sec. 32, in force at the date of the assessment under consideration, was intended to meet instances like the one presented. Though that statute provided that a tract of 1000 acres or less lying partly in one county or assessment district and partly in another should be entered for taxation in the county or assessment district wherein the greater part in value was situated, yet it distinctly said that entry and payment in any county or district where any part of the land was situated should be a discharge of the taxes. It may be said that "assessment district" as here used does not mean a magisterial district. But why permit the rule to operate only as to assessments in the wrong county or general assessment district and deny it to assessments in the wrong magisterial district? The principle is the same in either case. More instances for its application are sure to arise as to magisterial districts than as to counties and general assessment district, because of the greater number of the former. Certain it is, the Legislature has never said that payment of taxes under a listing in a magisterial district where the smaller portion of the land is situated shall not be deemed an acquittance of those taxes.

Plaintiff insists that his tax deed cannot be annulled in this suit, because Phares did not attack it within five years. The provision of the statute on which plaintiff relies in this particular, Code 1906, ch. 31, sec. 27, does not apply to an erro-

neous assessment like that under which plaintiff bought. *Bradley v. Ewart,* 18 W. Va. 598, settles this point.

It is useless to take up the question of adverse possession on the part of Phares and the widow of Crouch as against the claim of plaintiff by his tax deed. In any event, the tax deed is void because plaintiff bought under a totally erroneous assessment, and for a year when there was no delinquency of taxes for which a sale could be made. The Lakin and DeBerry deeds are of course void on the same ground. The decree is a proper one. It will be affirmed.

*Affirmed.*